FT. WORTH & R. G. RY. CO. et al. v. STARR et al.

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 8, 1911. Rehearing Denied Dec. 23, 1911.)

1. CARRIERS (§ 20*)—PROTECTION OF LIVE STOCK—DOUBLE-DECK CARS—REQUEST.

Under Rev. St. 1895, art. 4502a, making it the duty of railway companies to provide double-deck cars for the shipment of sheep, goats, hogs, and calves, and article 4502b, providing a penalty for failing to provide such cars unless single-deck cars provided are shipped at half the usual rate, a demand by the shipper of such animals for a double-deck car will be implied.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 20.*]

2. CARRIERS (§ 20*)—TRANSPORTATION OF LIVE STOCK — DOUBLE-DECK CARS — ACTION FOR PENALTY.

Rev. St. 1895, art. 4502a, makes it the duty of railway companies to provide double-deck cars for sheep, goats, hogs, and calves, but prescribes no penalty for their failure to do so. Article 4502b declares that it shall be unlawful to charge more for shipping a double-deck car of such animals than is charged for shipping a car load of other cattle or horses, and that any railway company which shall fail or refuse to furnish double-deck cars for sheep, etc., shall be liable to the owner or shipper for $500 liquidated damages, provided that, if the railroad company shall transport such animals in single-deck cars at half the price per car load charged for shipping horses and other cattle, the penalty shall be inoperative. *Held*, that a shipper of sheep, etc., had no actionable right to recover a penalty for failure to provide double-deck cars, unless he had been charged and required to pay a greater amount for his shipment in single-deck cars than one-half the price per car load charged for horses and other cattle.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 20.*]

3. CARRIERS (§ 20*) — TRANSPORTATION OF ANIMALS—CONNECTING CARRIERS—DOUBLE-DECK CARS.

Under Rev. St. 1895, arts. 4502a, 4502b, subjecting carriers to penalty for failing to provide double-deck cars for shipment of sheep, etc., unless single-deck cars are furnished at

half the rate of a double-deck car, a connecting carrier on being tendered single-deck cars of sheep is entitled to assume that the shipper desired the shipment to continue in the same cars in which the animals were loaded, and was not liable for continuing the shipment in such cars, in the absence of a request that they be changed to a double-deck car.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 20.*]

4. CARRIERS (§ 20*) — TRANSPORTATION OF LIVE STOCK — DOUBLE-DECK CARS—PENALTIES—COLLECTION OF FREIGHT.

Rev. St. 1895, arts. 4502a, 4502b, subject carriers to a penalty for refusing to provide double-deck cars for sheep, etc., unless, when single-deck cars are provided the stock is transported at half the rate charged for the transportation of cattle, horses, etc. *Held*, that where an initial carrier refused to provide double-deck cars for the shipment of plaintiff's sheep, and the terminal carrier collected full rates for the transportation of the sheep in single-deck cars, the initial carrier was liable for the penalty, unless it sustained the burden of proof that such terminal carrier had no authority to act for it in collecting such rate.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 20.*]

Appeal from Erath County Court; J. B. Keith, Judge

Action by H. E. Starr against the Ft. Worth & Rio Grande Railway Company and others. Judgment for plaintiff against the Ft. Worth & Rio Grande Railway Company and against him in favor of the Texas & Pacific Railway Company, and both parties appeal. Reversed and remanded.

Martin & Johnson, for appellant Ft. Worth & R. G. Ry. Co. Chandler & Pannill, for H. E. Starr. H. C. Shropshire, for appellee, Texas & P. Ry. Co.

CONNER, C. J. Appellee H. E. Starr instituted this suit against the Texas & Pacific Railway Company and the Ft. Worth & Rio Grande Railway Company to recover an alleged overcharge of $17.50 on a shipment of 187 sheep from Mesquite, Tex., to Stephenville, Tex., and a further sum of $500 as a penalty for a violation of Rev. St. 1895, arts. 4502a, 4502b, imposing on railway companies the duty of furnishing double-decked cars for shipments of the character in question. The trial was before the court without a jury, and resulted in a judgment in the plaintiff's favor against the Ft. Worth & Rio Grande Railway Company for both overcharge and penalty, but against him in favor of the Texas & Pacific Railway Company. The plaintiff has appealed from the judgment in favor of the Texas & Pacific Railway Company, and the Ft. Worth & Rio Grande Railway Company has appealed from the judgment against it.

The statutes upon which the suit is founded are as follows: Article 4502a: "All railroad companies operating any railroad, or any part thereof, within the limits of this state, are required to provide cars with double decks for the shipment of sheep, goats, hogs and calves; that the said cars must be in every way as large as those now in use upon the respective railroads of this state; that the distance between the floor and the second deck shall be the same as the distance between said second deck and the roof; the floor of said second deck shall be so constructed as to protect the animals beneath; and said cars must be furnished by the railroad company to any person who shall offer to ship at one time hogs, sheep, goats, or calves, in car load lots." Article 4502b: "It shall not be lawful for any railroad company to charge more for shipping a double-decked car load of sheep, goats, hogs, or calves than is charged for shipping a car load of other cattle or horses the same distance, and in the same direction, and any railroad company that shall fail or refuse to furnish double-decked cars of the dimensions prescribed in the preceding article, to any person who may wish to ship as much as a double-decked car road of sheep, hogs, goats, or calves, or shall charge more for shipping a double-decked car load of sheep, hogs, goats, or calves, than for shipping a car load of other cattle or horses for the same distance and in the same direction, shall be liable to pay to the owner or shipper of said sheep, hogs, goats, or calves, the sum of five hundred dollars as liquidated damages, to be recovered in any court of competent jurisdiction; provided, that if any railroad companies shall transport sheep, hogs, goats and calves on single-decked cars at one-half the price per car load charged for shipping horses or other cattle, then the penalties prescribed in this article for failure to provide double-decked cars shall be inoperative." Appellee alleged, and his evidence supports the allegations, that he owned 187 sheep at Mesquite, Dallas county, that he wished to ship to Stephenville, Erath county, and that prior to the shipment he requested of the agent of the Texas & Pacific Railway at Mesquite a double-decked car in which to ship the sheep, which request was denied. The shipment was, accordingly, made in two single-decked cars on contracts by the Texas & Pacific Railway to ship to Ft. Worth "at the tariff rate per Cwt." A waybill for each car was also issued by the Texas & Pacific Railway Company's agent at Mesquite, specifying the weight as "16,000" pounds and the freight rate as "9½-freight $15.20." At Ft. Worth, where the Texas & Pacific Railway connects with the Ft. Worth & Rio Grande Railway, new contracts and waybills were executed by the latter-named company, and the sheep were forwarded to Stephenville. At Stephenville the agent of the Ft. Worth & Rio Grande Railway Company, over appellee's protest, collected as freight charges the full

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r indexes

sum of $56, or $28 per car. It is undisputed that this was the freight upon single-decked cars having a minimum weight of 16,000 pounds between the initial and terminal points of shipment as prescribed by the Railway Commission of Texas. On double-decked cars having a minimum weight of 22,000 pounds, the proper charge was $38.-50. The commission rate between the points of shipment was the same, viz., 17½ cents per hundredweight, the difference in the total freight charges hereinbefore stated arising from the difference in the minimum weights prescribed for double-decked and single-decked cars. The trial court did not file his conclusions of fact and law, and hence we are left to conjecture only for the reasons which prompted the general judgment, but, in any view of the case as presented by the record before us, we conclude that the judgment is wrong.

[1, 2] When appellee Starr arrived at Ft. Worth with his sheep, they were transferred to the tracks of the Ft. Worth & Rio Grande Railway Company in the same cars in which the sheep were originally loaded, and it is not alleged by appellee Starr that he there made of this company any request or demand for a change of cars, or for a double-decked car. Appellee insists that he so testified, and that no request is required. But we are of opinion that a request is to be implied, and that, in the absence of an allegation, no effect can be given to the testimony referred to. While in general terms article 4502a makes it the duty of railway companies to provide double-decked cars for the shipment of sheep, goats, hogs, and calves, no penalty is therein prescribed for a failure to do so. For the penalty we must refer to the succeeding article 4502b. Construing the two articles together, as must be done, and particularly the proviso of the latter article, it seems reasonably clear that the main legislative purpose was to regulate freight rates in the interest of the shipper of such classes of animals, and not at all events to prohibit the use of single-decked cars, for, notwithstanding the general terms used, it is particularly specified that the railway company may render the penalty wholly inoperative by merely charging for shipments of sheep, etc., on single-decked cars one-half the usual rate. In so providing legislative regard is manifested for cases in which it might be impossible to furnish a double-decked car at a given place under circumstances easily imagined, or where to do so would greatly delay and injure the shipper. In other words, a shipper of sheep, hogs, etc., has no actionable right to complain merely because he is tendered a single instead of a double decked car. Such right is maintainable only after he is charged and required to pay the greater amount in freight.

[3] It would, therefore, be unreasonable, we think, to hold that in receiving the two single-decked cars in question from its connecting carrier at Ft. Worth the Ft. Worth & Rio Grande Railway Company subjected itself to the penalty of the statute in the absence of a request on appellee Starr's part that a change to a double-decked car be made. In the absence of such requests, we think the agents of that company could lawfully assume that Starr desired the shipment to continue in the same cars in which the sheep were already loaded. In such case, as heretofore stated, the undisputed lawful rate of freight was as charged and collected at Stephenville. The overcharge and penalty, therefore, should not have been adjudged against the Ft. Worth & Rio Grande Railway Company.

[4] But how stands the case as against the Texas & Pacific Railway Company? As appears from what we have already said, every fact necessary to a recovery of the penalty imposed by the statute was both alleged and sustained by evidence, except, as the Texas & Pacific Railway Company now insists, it was not shown that that company ever authorized the collection of or received any part of the excessive charge. But we are of opinion that the statute places the burden of proof upon the company, if it wishes to escape the penalty, to affirmatively show that it neither charged nor authorized the charge at the single-decked car rate, or knowingly received any part of the collection actually made, and this burden was not met. The record is silent in these particulars, save that it does appear that the agent of the Texas & Pacific Railway Company did charge in the several waybills issued by him the regular commission rate on single-decked cars to Ft. Worth, and if no part of this was in fact received by his company, or if no traffic arrangement between the companies existed which made the terminal carrier its agent for collecting its pro rata part of the through freight collected, no other party could so well know it or so easily prove it. In cases where they apply, the true view of the articles of the statute quoted is that, if there be a failure or refusal to furnish double-decked cars after demand therefor, the penalty prima facie attaches, and, if the offending company wishes to render the penalty inoperative, it must bring itself within the proviso. The rule established by the great weight of authority undoubtedly is that a proviso contained, as here, in the body of a statute is matter of defense. See Lane v. Bell, 53 Tex. Civ. App. 213, 115 S. W. 918, and authorities there cited. In the condition of the evidence, therefore, the court erred in rendering judgment in favor of the Texas & Pacific Railway Company.

The conclusions noted might logically seem to require a reversal and rendition of the judgment here, but we do not feel sure that the case was fully developed, and hence reverse the judgment and remand the case for another trial. For instance, there was testimony to the effect that, when appellee Starr

proffered to pay the freight at Mesquite, he was told that the freights might be adjusted and paid at Stephenville. This, together with the omissions in the evidence already mentioned, and the agent's further testimony to the effect that he had no purpose to charge an excessive rate, might result in a finding that the collection of the larger rate at Stephenville was wholly unauthorized and contrary to the purpose of the initial carrier. As against the Ft. Worth & Rio Grande Railway Company, too, there was evidence perhaps tending to show that demand was made of it at Ft. Worth for a double-decked car, or, if not, that it collected the larger freight with full knowledge of the demand at the beginning point. The effect of such evidence need not now be determined, for, at all events, we think the judgment as to all parties should be reversed and the cause remanded. In so ordering, however, we should add that in no event do the statutes under consideration contemplate a recovery for both an overcharge and the penalty. The penalty is made the full measure of a failure or refusal to furnish the double-decked car.

Reversed and remanded.